506 A.2d 392

**COMMONWEALTH of Pennsylvania, Petitioner,**

**v.**

**Robert Ronald SIMON, Respondent.**

Supreme Court of Pennsylvania.

March 19, 1986.

## ORDER

PER CURIAM:

AND NOW, this 19th day of March, 1986, the Order of the Court of Common Pleas of Allegheny County, Criminal Division, entered October 11, 1985, at No. CC8406482 in the above-captioned matter is vacated. The matter is remanded for trial without prejudice to respondent's right to raise the death qualification issue on direct appeal.

NIX, C.J., and ZAPPALA, J., file dissenting statements.

NIX, Chief Justice, dissenting.

I dissent.

The claims the Commonwealth attempts to assert are premature and it is inappropriate for this Court to review them in the abstract. It has been a principle of long standing in this Commonwealth that objections to voir dire will not be entertained where the objecting party has not exhausted its peremptory challenges. *See, e.g., Common-*

*wealth v. Morales,* 508 Pa. 51, 494 A.2d 367 (1985); *Commonwealth v. Romeri,* 504 Pa. 124, 470 A.2d 498 (1983), *cert. denied,* 466 U.S. 942, 104 S.Ct. 1922, 80 L.Ed.2d 469 (1984); *Commonwealth ex rel. Ryan v. Rundle,* 411 Pa. 613, 192 A.2d 362, *cert. denied,* 375 U.S. 948, 84 S.Ct. 358, 11 L.Ed.2d 277 (1963); *Commonwealth v. Moon,* 389 Pa. 304, 132 A.2d 224, *cert. dismissed,* 355 U.S. 908, 78 S.Ct. 335, 2 L.Ed.2d 270 (1957); *Commonwealth v. Bibalo,* 375 Pa. 257, 100 A.2d 45 (1953); *Commonwealth v. Spahr,* 211 Pa. 542, 60 A. 1084 (1905); *Commonwealth v. Fry,* 198 Pa. 379, 48 A. 257 (1901). In the instant case no voir dire has even been conducted. Any claim of prejudice, therefore, is purely speculative.

Moreover, if the merits are to be reached, it would be appropriate to allow oral argument. The procedure adopted by the trial court was formulated in response to its conclusion that the death-qualification process results in the empaneling of juries which are conviction-prone and unrepresentative of the community. In *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the United States Supreme Court found the empirical data then available "too tentative and fragmentary" to support that conclusion. *Id.* at 517, 88 S.Ct. at 1774. In the wake of *Witherspoon,* however, numerous studies of increasing reliability and precision have been conducted. *See Commonwealth v. Maxwell,* 505 Pa. 152, 171–75, 477 A.2d 1309, 1320–21, *cert. denied,* —— U.S. ——, 105 S.Ct. 370, 83 L.Ed.2d 306 (1984) (Nix, C.J., dissenting). The United States Supreme Court has recently agreed to review a case which will provide the opportunity to reevaluate the death-qualification issue in light of the data now available. *Lockhart v. McCree,* —— U.S. ——, 106 S.Ct. 59, 88 L.Ed.2d 48 (1985). While the decision in *Lockhart* will be dispositive under the federal Constitution, this Court has an independent responsibility to reevaluate the death-qualification procedure as a matter of state constitutional law. *See Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457 (1983). Unlike prior cases in which the death-qualification issue has been

raised, *e.g., Commonwealth v. Colson,* 507 Pa. 440, 490 A.2d 811 (1985); *Commonwealth v. Szuchon,* 506 Pa. 228, 484 A.2d 1365 (1984); *Commonwealth v. Maxwell, supra,* the instant matter presents a full evidentiary record including both empirical studies and expert testimony. The majority's summary rejection of the trial court's ruling is therefore highly inappropriate.

ZAPPALA, Justice, dissenting.

I dissent and would assume plenary jurisdiction of the matter before us. For the first time the important issue presented here has been crystallized, providing us with an adequate vehicle with which to resolve the conflict. This Court should grasp the opportunity and, by the use of extensive briefing and oral argument, reach its final conclusion. In so doing, we would provide ourselves with the vehicle to intelligently establish *this Commonwealth's* position on death qualified juries and revive our illustrious past history of being regarded as one of the polestars of jurisprudence in this nation, rather than a follower of popular trends in deferring all the hard, fundamental constitutional decisions to federalism, with its attendant buzzwords and confusion. In failing to so act, I must query my brethren as to what, if any, independent vitality remains in the Constitution of this Commonwealth and the rights it affords the citizens who choose to be governed thereunder.