658 A.2d 392

COMMONWEALTH of Pennsylvania

v.

William HARRIS, Appellant.

Superior Court of Pennsylvania.

Argued March 20, 1995.

Filed April 19, 1995.

Mark D. Mungello, Blackwood, NJ, for appellant.

Helen Kane, Asst. Dist. Atty, Philadelphia, for Com., appellee.

Before ROWLEY, P.J., and CAVANAUGH and McEWEN, JJ.

CAVANAUGH, Judge:

William Harris appeals from sentence of life imprisonment consequent upon his conviction by a jury of first degree murder and refusal to grant post-verdict relief.

The victim, who died of numerous stab wounds, was Claritha Granberry who lived with her common law husband at 6225 Carpenter Street in Philadelphia. She was found dead at her residence by her husband, James Gill, and a neighbor after Gill returned home from his work as a bartender at 2:00 A.M. on July 1, 1987. Gill testified that when he returned home from work, he found the front door of the residence "open". Appellant Harris was, at the time, living with the decedent's sister, Deborah Cole and he became implicated as a possible perpetrator as the result of a report of a phone conversation by Janice Cuff of Sicklerville, New Jersey. Cuff's testimony was crucial to the Commonwealth's case and provides the basis for appellant's first argument on appeal. She stated that she had known the victim for some 40 years since their childhood. Cuff's testimony was that Claritha called her on the telephone on June 30 at about 10:00 P.M. and they were discussing a forthcoming visit of Claritha to New Jersey. The testimony in part:

8

A. While we were talking, she said the bell was ringing and she also said I wonder who is that ringing my bell so late. That's what I recall. It was around 12:30. So I said I wonder who it is. She said I don't know. I said call me back. She said no, hold on, because I want to find out the directions, so don't hang up. I'll be right back. So she left and to the door, and it was a minute or so and being there just in May, I could picture just about where he was coming from.

\* \* \* \* \* \*

BY MR. WILLIAMS:

Q. You said she was gone about a minute or so?

A. Yes. And she returned and she whispered. She said it's my so-called brother-in-law, and I said who, I said Deborah's boyfriend?

\* \* \* \* \* \*

It's my so-called brother-in-law, is that what you are saying?

THE WITNESS: Yes.

\* \* \* \* \* \*

BY MR. WILLIAMS:

Q. Go ahead, ma'am. And you said what?

A. Deborah's boyfriend? She said geek and I said what does he want, and she said I don't know what the nigger wants, so I said what should we do—

A. Let me stop you right there, ma'am. What tone of voice was she speaking in before she told you that it was someone at the door?

A. Just regular.

Q. Okay. When she came back after being gone for a minute and a half, what tone of voice was she speaking in then?

A. She was whispering.

Q. Were you able to tell whether or not there was anyone else in the room with her or nearby?

A. Not in the house before we were talking. Before the bell rang.

Q. After she came back and was whispering to you on the telephone is where I am now.

Were you able to make a determination as to whether or not anybody was in the room?

\*      \*      \*      \*      \*      \*

THE WITNESS: She said I don't know what the nigger wants. Excuse my expression.

THE COURT: I don't want what he wants. Okay.

BY MR. WILLIAMS:

Q. She was whispering then. I am going to take you back, ma'am, which I didn't hear clearly, back to when she first came back to the telephone and told you that it was her so-called brother-in-law. Do you recall that?

A. Yes.

Q. And you said what to her?

\*      \*      \*      \*      \*      \*

BY MR. WILLIAMS:

Q. We go back to when she came back to the telephone call after being gone for a minute and a half and she says to you it's my so-called brother-in-law.

A. Yes.

Q. I don't know what he wants?

A. But I said to her, Deborah's boyfriend.

Q. You said Gig or?

A. She said Gig and the nickname and all, that's why I asked her was it Deborah's boyfriend, and she said yes.

THE COURT: Who used the word Gig, you or the other lady?

THE WITNESS: C used Gig, because I didn't.

BY MR. WILLIAMS:

Q. Had you ever heard the name Gig before, before she gave it to you on the phone?

A. No.

Q. Approximately how long was she on the phone when she came back and she was whispering in the phone? How long did that go before you eventually ended?

A. I guess about three minutes or so.

Q. And she continued to whisper after that?

A. Right.

Q. Okay. Now, what if anything did she say to you and you said to her directly before the phone is hung up?

A. I asked her what was she going to do and she said I want to find out the directions so I'll call you back. Then she said I'll call you back.

Q. And the phone call ended?

A. Yes.

Q. You think that was approximately 10:30 or thereabouts?

A. Yes.

Q. And did she ever call you back that night?

A. No.

Q. Did you ever call her back?

A. No.

[objections omitted]

▮▮▮ Appellant has been identified in the record as "Gig". This testimony, which would place appellant in the decedent's residence at or about 10:00 P.M. on the night of the murder, was admitted as an exception to the hearsay rule on variously stated bases that it was "state of mind", "res gestae" and/or "a spontaneous declaration". While we disagree with the trial court's choice of nomenclature for the admissibility of the testimony of witness Cuff, we agree that it was properly admitted.[1] The victim's identification of appellant as her visitor is clearly, if not classically, an example of a present sense impression exception to the hearsay rule. It is clear

---

1. We may affirm the decision of the trial court if the result is correct on the basis of another exception to the hearsay rule. *Commonwealth v. Shaw,* 494 Pa. 364, 431 A.2d 897 (1981); *Commonwealth v. Peterkin,* 511 Pa. 299, 513 A.2d 373 (1986).

that Claritha was stating a contemporaneous verbalization of her observation (that Gig was the man at the door). Our supreme court has recognized this exception to the hearsay rule in closely similar circumstances involving a telephone conversation. *Commonwealth v. Peterkin,* 511 Pa. 299, 513 A.2d 373 (1986). Pennsylvania lawyer, David F. Binder, treats with this very situation in his handbook on hearsay:

A person may describe or explain something that he is observing to someone else over the telephone. In such event what the listener on the telephone hears are present sense impressions.

See *Brown v. Tard* (D NJ 1982) 552 FSupp 1341, 1350–1351, in which a maintenance worker in an apartment building was convicted of murdering a tenant's live-in girl friend. The tenant (Hickson) testified that on the morning of the day of the murder the victim (Shelly Weinstein) called him on the telephone and told him that she was not going to go to work and that "the guy is here to fix the air conditioner." The court, denying defendant's petition for habeas corpus, explained (page 1351):

Shelly Weinstein's statement that a man was there to fix the air conditioner meets the requirements that the declarant personally perceive the event, that the statement explain or describe the event, and that there be contemporaneity of the statement and the event described. Hickson's testimony thus falls within the present sense impression exception to the hearsay rule.

Binder, *Hearsay Handbook,* Second Edition, Exception 1 Present Sense Impression p. 90 (citing also *Commonwealth v. Pronkoskie,* 477 Pa. 132, 383 A.2d 858, 860 (1978)).

█ It bears comment that in *Commonwealth v. Blackwell,* 343 Pa.Super. 201, 494 A.2d 426 (1985) an opinion by Spaeth, P.J., the present sense impression exception is described as requiring that the declarant see the event and make an observation *to another person also present at the scene.* The stated requirement that the recipient of the statement be also at the scene does not appear to represent the commonly accepted understanding of this important exception to the

hearsay rule and since it preceded *Peterkin* (a supreme court case) we do not deem the requirement to be presently controlling.

We conclude that there was no error in the admission of the testimony of witness Cuff concerning the identification of the persons who came to decedent's door during the telephone conversation. Appellant makes numerous other arguments which we discuss in a supplemental memorandum filed contemporaneously with this opinion —— Pa.Super. ——, —— A.2d ——. Since we find no merit to any of appellant's arguments, we affirm the judgment of sentence.

Judgment of sentence affirmed.