J-S23034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VASEN REGAN | : | |
| | : | |
| Appellant | : | No. 287 EDA 2017 |

Appeal from the PCRA Order January 12, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009480-2007

BEFORE:   SHOGAN, J., NICHOLS, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED MAY 22, 2018**

Appellant, Vasen Regan ("Regan"), appeals from the January 12, 2017,

order entered in the Court of Common Pleas of Philadelphia County, which

denied his first petition filed under the Post-Conviction Relief Act ("PCRA"), 42

Pa.C.S.A. §§ 9541-9546.  After a careful review, we affirm.

This Court has previously set forth, in part, the facts and procedural

history underlying this case as follow:

> On July 31, 2006, Darrick Hampton ("Hampton") was shot
> and killed at the Mill Creek Playground on Parrish Street in
> Philadelphia.  Hampton was killed by multiple gunshot wounds,
> including a bullet to his back that went through his lung and exited
> out of his chest.  Police Officer Lawrence Webb responded to the
> shooting and found Hampton lying on the ground.  Hampton was
> unresponsive to questioning by Officer Webb.  Further, the crowd
> that had gathered at the scene did not report any information to
> the police. Detective Brian Fetters was assigned to investigate the
> murder.  Detective Fetters interviewed Regan's cousin, Cornelius
> James ("James").  James stated that Regan had told him on the
> night of the shooting that he had "offed an old head" at the Mill

_____

*   Former Justice specially assigned to the Superior Court.

Creek Playground. James indicated this meant that Regan had shot the man killed in the playground earlier that night. Detective Fetters also contacted Richard "Mouse" Johnson ("Johnson") about what he had witnessed at the playground. Johnson provided a statement to the police, which the trial court summarized as follows:

> [Johnson] stated that he knew [Hampton] for over a year as a drug user and an owner of various properties in the city. [Johnson] also stated he knew [Regan] for approximately two weeks from around the neighborhood. [Johnson] further stated that on the evening of July 31, 2006, [he] saw [Hampton] at Mill Creek Playground storming around belligerently, looking to buy crack cocaine. [Johnson] said he was occupied with being an MC at a basketball game and he sent [Hampton] to the other side of the playground. When [Hampton] returned[,] he continued to yell, possibly about the size or quality of the crack. [Hampton] then left the playground and walked to a Range Rover, subsequently determined to be his vehicle. During this time, [Johnson] tried to calm [Hampton] down and also began to speak to [Regan]. When [Hampton] returned to the playground[,] he was still upset. [Johnson] saw [Regan] walk toward [Hampton] and [Johnson] saw [Regan] pull out a gun. While facing [Hampton], [Johnson] heard four or five shots fired from his right side where [Regan] was standing and saw a flash out of the corner of his eye. [Johnson] also stated, although [Hampton] was unarmed and only had crack in his hand, [Regan] probably shot him because he thought [Hampton] was going to "try some type of move." [Johnson then selected Regan's photo out of an array.]

Trial Court Opinion, 3/10/10, at 3 (citation omitted).

The police eventually arrested Regan for Hampton's murder. The matter proceeded to a jury trial on November 17, 2008. At trial, Johnson contradicted the statement he had given to the police and stated that Regan was not the killer. The Commonwealth introduced his prior statement at trial. James also refused to be sworn in at trial and was declared unavailable at trial. James' statement regarding Regan's admission was read into the record. Another witness, Chantell Whitaker ("Whitaker"),

was also uncooperative and could not be found for trial, even after a bench warrant for her arrest had been issued. On November 20, 2008, the jury found Regan guilty of [first-degree murder and possessing an instrument of crime, 18 Pa.C.S.A. §§ 2502(a) and 907, respectively]. On April 6, 2009, the trial court sentenced Regan to life in prison for the first-degree murder conviction and a concurrent prison term of one to two years for the possessing an instrument of crime conviction. Regan filed post-sentencing motions. Regan's counsel also filed a motion to withdraw. The trial court permitted counsel to withdraw and appointed Regan new counsel. Subsequently, the post-sentencing motions were denied by operation of law.

*Commonwealth v. Regan*, No. 2406 EDA 2009, at 1-3 (Pa.Super. filed Oct. 18, 2010) (unpublished memorandum) (footnote omitted).

Regan filed a timely, direct appeal from his judgment of sentence. On appeal, Regan challenged the sufficiency of the evidence supporting his conviction for first-degree murder, alleged the jury's verdict was against the weight of the evidence, and presented claims of prosecutorial misconduct. Concluding Regan's claims were waived and/or meritless, this Court affirmed his judgment of sentence. *See id.* Regan filed a petition for allowance of appeal, which our Supreme Court denied on June 16, 2011.

On or about March 7, 2012, Regan filed a timely, *pro se* PCRA petition, and counsel was appointed to represent him. On July 11, 2013, counsel filed an amended PCRA petition on behalf of Regan. On May 15, 2015, the PCRA court conducted an evidentiary hearing limited to the issue of whether prior counsel was ineffective for failing to call Seron Rose to testify at trial. N.T., PCRA hearing, 5/15/15/, at 4. On January 12, 2017, the PCRA court denied Regan's PCRA petition in its entirety. This timely, counseled appeal followed.

- 3 -

The PCRA court directed Regan to file a Pa.R.A.P. 1925(b) statement, Regan timely complied, and the PCRA court filed a responsive Pa.R.A.P. 1925(a) opinion.

Regan presents the following issues, which we have set forth verbatim:

1. Did the PCRA court err in summarily dismissing the claim that all prior counsel were ineffective for failing to challenge the legal sufficiency of the verdict, as it was based solely on evidence of prior inconsistent statements, a violation of the federal Due Process Clause?

2. Did the PCRA court err in summarily dismissing the claim that trial counsel was ineffective for failing to object to the prosecutor's closing argument in which she repeatedly referred to matters not in evidence and disparaged [Regan's] character?

3. Did the PCRA court err in summarily dismissing the claim that direct appeal counsel was ineffective for failing to preserve the claim that the trial court erred in denying [Regan's] motion to preclude the Commonwealth from impeaching intended character witnesses with prejudicial evidence that did not rebut the proffered trait of peacefulness?

4. Did the PCRA court err in summarily dismissing the claim that trial counsel was ineffective for failing to request a "corrupt source" instruction as it related to Commonwealth witness Richard Johnson?

5. Did the PCRA court err in summarily dismissing the claim that trial counsel was ineffective for failing to object to the introduction of the former testimony of Cornelius James because the defense did not have a full and fair opportunity to cross-examine him at the prior proceeding?

Regan's Brief at 3-4.

Initially, we note the following relevant legal principles.

When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error. Generally, we are bound by a PCRA court's credibility determinations. However, with regard to a court's legal conclusions, we apply a *de novo* standard.

*Commonwealth v. Johnson*, 635 Pa. 665, 139 A.3d 1257, 1272 (2016)

(quotation marks and quotations omitted).

Furthermore,

In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in Section 9543(a)(2), which includes the ineffective assistance of counsel. 42 Pa.C.S.[A.] § 9543(a)(2)(i).

It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. To prevail on an ineffectiveness claim, the petitioner has the burden to prove that (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. The failure to satisfy any one of the prongs will cause the entire claim to fail.

*Commonwealth v. Benner*, 147 A.3d 915, 919–20 (Pa.Super. 2016)

(quotation marks, quotations, and citations omitted).

We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case. Finally, counsel cannot be deemed ineffective for failing to raise a meritless claim.

*Johnson*, 139 A.3d at 1272 (citations omitted).

In his first argument, Regan contends his prior attorneys were ineffective in failing to raise a sufficiency of the evidence claim. Specifically, he contends prior counsel should have challenged the sufficiency of the

evidence concerning his identity as the shooter. We conclude Regan is not entitled to relief on this claim.

Initially, we note that Regan is mistaken in his assertion that his prior attorneys did not challenge the sufficiency of the evidence as to identity. In the post-sentence motion, trial counsel specifically challenged the sufficiency of the evidence as to Regan's identity as the shooter. Furthermore, on direct appeal, Regan's appellate counsel challenged the sufficiency of the evidence as to his first-degree murder conviction. Specifically, Regan's counsel alleged on direct appeal that the Commonwealth failed to prove the identity of Regan as the shooter and/or that he acted with the requisite *mens rea* for first-degree murder.

> In finding no merit to the sufficiency claim, we specifically held:
>
> Here, the trial court's Opinion has thoroughly addressed this claim and found it to be without merit. **See** Trial Court Opinion, 3/10/10, at 2-5. The trial court found that the evidence was sufficient to support the murder of the first-degree conviction as the evidence demonstrated that Regan was the shooter and acted with malice by shooting a gun at a vital body part of Hampton's body. **See Commonwealth v. Moore**, 937 A.2d 1062, 1067 (Pa. 2007) (concluding that "[t]he manner in which the victim was killed (two gunshot wounds to his back, one of which penetrated his heart) constitutes circumstantial evidence of malice and specific intent to kill on [the] appellant's part[.]"). We agree with the sound reasoning of the trial court and affirm on this basis.

**Regan**, No. 2406 EDA 2009, at 5-6 (citation omitted).

Accordingly, to the extent Regan now contends his prior counsel failed to challenge the sufficiency of the evidence as to his identification as the shooter, we find no arguable merit to his claim. Further, to the extent Regan

challenges the manner in which direct appeal counsel litigated the claim on appeal, we conclude Regan has failed to demonstrate the outcome of the proceedings would have been different. *See Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121, 142 (2012). Thus, we find Regan is not entitled to relief on his first claim.

In his second claim, Regan contends trial counsel was ineffective in failing to object to certain comments made by the prosecutor during closing arguments.[1] Specifically, he contends trial counsel should have objected to the following statements, which were made by the prosecutor: (1) "Is it likely that [the police] are going to lie on this defendant?. . .They didn't know him from a can of paint, so why are they going to risk everything, a collective total of 64 years of professional experience[.]" N.T., 11/19/08, at 212-13; (2) "Cornelius James, Ladies and Gentlemen, had important information. He had valuable information. He had information that you needed to hear in this case

_____

[1] Regan points to certain statements from the prosecutor's closing argument in which the prosecutor commented on Chantell Whitaker's failure to appear for trial. *See* Regan's Brief at 26-27, 29. He also points to statements made by the prosecutor in which she characterized James as Regan's cousin. *Id.* at 31. Regan indicates trial counsel properly objected to these challenged statements; however, he contends appellate counsel was ineffective in failing to challenge/litigate properly these statements on direct appeal. Regan did not challenge appellate counsel's effectiveness in this regard in his court-ordered Pa.R.A.P. 1925(b) statement. Thus, the specific issue as to appellate counsel's effectiveness is waived. *See* Pa.R.A.P. 1925(b); *Commonwealth v. Paddy*, 609 Pa. 272, 15 A.3d 431 (2011) (holding that claims of trial counsel ineffectiveness are distinct from claims of appellate counsel ineffectiveness).

to help you make your decision. And he tried to deprive you of that information by not speaking." *Id.* at 227; and (3) "You are not going to find a bank executive from, you know, Bank of America, out in Mill Creek Playground in West Philadelphia at eleven o'clock on a summer night where people are gambling and selling drugs and walking around with guns. People that are out there are people like Richard Johnson, like Cornelius James, and like this defendant. . . ." *Id.* at 205.

With regard to Regan's underlying claim of prosecutorial misconduct during closing argument, we note it is well settled that "[i]n reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made." *Commonwealth v. Sampson*, 900 A.2d 887, 890 (Pa.Super. 2006) (citation omitted). Our review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. *Commonwealth v. Rios*, 554 Pa. 419, 721 A.2d 1049, 1054 (1998).

> In addition, we note the following:
>
> It is well-settled that a prosecutor has considerable latitude during closing arguments and [her] arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. Further, prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. Prosecutorial misconduct is evaluated under a harmless error standard.

*Commonwealth v. Holley*, 945 A.2d 241, 250 (Pa.Super. 2008) (citations

and quotations omitted). We are further mindful of the following:

> In determining whether the prosecutor engaged in misconduct, we must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well settled that the prosecutor may fairly respond to points made in the defense closing. Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair.
>
> ***
>
> It is well-settled that it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses. However, the prosecutor may comment on the credibility of witnesses. Further, a prosecutor is allowed to respond to defense arguments with logical force and vigor. If defense counsel has attacked the credibility of witnesses in closing, the prosecutor may present argument addressing the witnesses' credibility.

*Commonwealth v. Chmiel*, 585 Pa. 547, 889 A.2d 501, 544 (2005)

(citations and quotations omitted).

We have reviewed Regan's underlying claims of prosecutorial

misconduct, and we conclude that the claims lack arguable merit. Specifically,

we conclude the prosecutor's statements were a fair response to arguments

advanced by Regan's trial counsel during his summation and based on the

evidence or proper inferences therefrom. *See* N.T., 11/19/08, at 178-79,

198-99 (defense counsel indicating during closing that the witnesses' pre-trial

statements were coerced by the police who sought "the best case scenario of

what they could get out" of the witnesses); 170-71 (defense counsel indicating

during closing that James' refusal to testify resulted in the jury not hearing from him "face-to-face[,]" thus resulting in James not coming "into this courtroom [and putting] his hand on the Bible"); 181 (defense counsel indicating during closing that James was arrested for an offense after the murder); 184-85 (defense counsel indicating during closing that one of the witness's statement "is a mess"); 189 (defense counsel indicating during closing that Johnson is a rapper--a "real humanitarian"). Accordingly, as there is no arguable merit to the underlying claim, trial counsel may not be deemed ineffective in failing to object on this basis.[2] *See Johnson*, *supra*.

In his third claim, Regan argues appellate counsel was ineffective in failing to raise on direct appeal the issue of whether the trial court erred in denying Regan's pre-trial motion in which he sought to preclude the Commonwealth from introducing Regan's prior convictions (drug trafficking and possession of an unregistered firearm) to rebut proffered character witness testimony. We conclude Regan's underlying claim lacks arguable merit, and therefore, appellate counsel was not ineffective in failing to raise the claim on direct appeal.

---

[2] Regan contends the cumulative impact of the prosecutor's improper comments made during her closing argument warrants a new trial. This substantive claim is waived as he could have presented it on direct appeal. 42 Pa.C.S.A. § 9544(b). He further "tacks on" a boilerplate assertion that appellate counsel was ineffective in failing to raise each claim of prosecutorial misconduct on direct appeal. *See* Regan's Brief at 38. Boilerplate assertions of ineffectiveness do not warrant relief. *See Paddy*, *supra*.

Prior to the commencement of trial, Regan's trial counsel requested a ruling on the following: "[I]f the defense introduce[s] evidence of the defendant's reputation in the community for being peaceful and nonviolent, [will the trial court] order the Commonwealth not to use any prior convictions for firearms or drug trafficking[?]" N.T., 11/17/08, at 5. The trial court ruled that, if Regan presented such character witnesses, the trial court would permit the Commonwealth to cross-examine the character witnesses with regard to Regan's prior weapon and drug trafficking offenses. *Id.* In response, Regan chose not to present character witnesses at trial. Regan contends that the trial court's ruling was in error and, accordingly, appellate counsel should have raised the issue on direct appeal.

Initially, we note that "[t]he scope of cross-examination is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. Where a character witness has testified as to a relevant trait of the defendant's good character, that witness may be impeached, on credibility grounds, just like any other witness." ***Commonwealth v. Morgan***, 559 Pa. 248, 739 A.2d 1033, 1035 (1999) (citations omitted).

Pennsylvania Rule of Evidence 405 relevantly provides the following:

**Rule 405. Methods of proving character**
**(a)** **Reputation evidence.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation. On cross-examination of the reputation witness, inquiry is allowable into specific instances of conduct probative of the character trait in question, except that in criminal cases

- 11 -

inquiry into allegations of other criminal misconduct of the accused not resulting in conviction is not permissible.

Pa.R.E. 405(a) (bold in original).[3]

Pursuant to Pa.R.E. 405(a), our Supreme Court has observed that "[a]lthough evidence of good character may not be rebutted by evidence of specific acts of misconduct, a character witness may be cross-examined regarding his knowledge of particular acts of misconduct by the defendant to test the accuracy of his testimony and the standard by which he measures reputation." ***Commonwealth v. Peterkin***, 511 Pa. 299, 513 A.2d 373, 382-83 (1986). Convictions for drug dealing, as well as possession of an illegal firearm, are relevant to a consideration of whether a defendant has a reputation for being peaceful and nonviolent. ***See Commonwealth v. Rashid***, 160 A.3d 838 (Pa.Super. 2017). Thus, where a defendant presents reputation evidence from a character witness, he "opens the door" for the Commonwealth to cross-examine the character witness regarding the defendant's drug trafficking and illegal firearm convictions. ***See Commonwealth v. Fletcher***, 580 Pa. 403, 861 A.2d 898, 916 (2004) ("[W]here the defense presents evidence of the defendant's reputation for peacefulness, the prosecution is permitted to test that testimony by inquiry

---

[3] Pa.R.E. 405 was amended, effective March 18, 2013. However, Regan's trial was held in 2008, thus the amended version is not applicable to the case *sub judice*.

into whether the witness is aware of convictions which tend to refute that reputation.") (quotation and quotation marks omitted)).

In the instant case, the trial court did not abuse its discretion in ruling that, if Regan presented character witnesses as to his reputation for peacefulness and non-violence, the Commonwealth could cross-examine the witnesses as to Regan's prior convictions for drug trafficking and possession of an unregistered firearm. Thus, appellate counsel cannot be found ineffective in failing to present the claim on direct appeal. *See Johnson*, *supra*.

In his fourth claim, Regan contends trial counsel was ineffective in failing to request a "corrupt source" instruction for Commonwealth witness Richard Johnson. Specifically, Regan contends there was evidence that Johnson was an accomplice such that the jury should have been instructed to receive Johnson's trial testimony with caution. We conclude Regan is not entitled to relief on this claim.

"[T]he standard charge for accomplice testimony [is] commonly referred to as the corrupt and polluted source charge. [I]n any case where an accomplice implicates the defendant, the judge should tell the jury that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution[.]" *Commonwealth v. Smith*, 609 Pa. 605, 17 A.3d 873, 906 (2011) (quotations and quotation marks omitted). "The 'corrupt source' charge in particular is designed specifically to address situations where one

- 13 -

accomplice testifies against the other to obtain favorable treatment. It directs the jury to view the testimony of an accomplice with disfavor and accept it only with care and caution." *Id.*

A corrupt source instruction is warranted where sufficient evidence is presented as to whether the witness is an accomplice. ***Commonwealth v. Williams***, 557 Pa. 207, 732 A.2d 1167, 1181 (1999). An individual is an accomplice if, with intent to promote or facilitate the commission of the offense, he solicits, aids, agrees, or attempts to aid another person in planning or committing the offense. ***Commonwealth v. Treiber***, 632 Pa. 449, 121 A.3d 435, 459 (2015).

In rejecting Regan's ineffectiveness claim, the PCRA court concluded there was no arguable merit to the underlying claim. Specifically, the PCRA court concluded there was no evidence that Johnson was an accomplice so as to warrant the instruction. PCRA Court Opinion, 7/31/17, at 9. Regan contends the PCRA court erred in this regard, and he points this Court to an excerpt of Regan's trial counsel's cross-examination of Johnson at trial. ***See*** Regan's Brief at 44-45 (citing N.T., 11/17/08, at 165-72).

We have reviewed the cited notes of testimony, and we agree with the PCRA court that the cross-examination testimony does not suggest that Johnson was an accomplice. Rather, Johnson testified that, six months after the shooting, the police questioned him about the shooting. Johnson testified at trial that he informed the police he was not sure who shot the victim. N.T.,

11/17/08, at 176. Further, Detective Robert Fetters, who took Johnson's statement, testified on cross-examination by Regan's trial counsel that Johnson "was allowed to leave" the police questioning at any time as he was not in custody. N.T., 11/18/08, at 48.

Simply put, contrary to Regan's suggestion, the record does not demonstrate that Johnson was an accomplice for the crimes for which Regan was on trial. There was, therefore, no evidence from which the finder of fact could have reasonably inferred that Johnson was Regan's accomplice, and it follows, therefore, that Regan was not entitled to a corrupt source instruction. Accordingly, his ineffectiveness of trial counsel claim fails for lack of arguable merit. **Johnson**, **supra**.

In his final claim, Regan contends trial counsel was ineffective for failing to object to the introduction of the preliminary hearing testimony of Cornelius James. We conclude Regan is not entitled to relief.[4]

_____

[4] The record reveals that, after James refused to provide his name for the record at trial and the trial court informed James that he faced possible "consequences" for refusing to answer, defense counsel requested to "see" the trial court. N.T., 11/18/08, at 194. The parties then met with the trial court for a discussion in chambers. *Id.* at 195. This discussion has not been provided to this Court, and therefore, we are unable to determine whether trial counsel, in fact, failed to lodge an objection to the introduction of James' preliminary hearing testimony. However, assuming, *arguendo*, that trial counsel failed to object, as discussed *infra*, we conclude Regan is not otherwise entitled to relief on his ineffective assistance of counsel claim.

In the case *sub judice*, James appeared for trial, but he refused to answer any questions. Accordingly, the Commonwealth requested that the trial court rule that James was unavailable for trial and that his testimony from the preliminary hearing be admissible pursuant to Pa.R.E. 804(b)(1).[5] The trial court granted the Commonwealth's request. Regan does not dispute that James was unavailable at trial for purposes of Rule 804(b)(1). **See** Regan's Brief at 49. However, Regan contends that he did not have a full and fair opportunity to cross-examine James at the preliminary hearing proceeding. Specifically, Regan asserts that he did not have an opportunity to impeach James at the preliminary hearing with criminal charges that were pending against James when he testified at Regan's preliminary hearing. **Id.** at 50-53. Consequently, Regan argues the Commonwealth did not meet the

_____

[5] The version of Pa.R.E. 804 in effect at the time of Regan's trial provided, in relevant part, the following:
> **Rule 804. Hearsay exceptions; declarant unavailable**
> ***
> **(b) Hearsay Exceptions.** The following statements, as hereinafter defined, are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>> (1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an adequate opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.
>
> Pa.R.E. 804(b)(1) (bold and italics in original).

requirements of Pa.R.E. 804(b)(1), and thus, trial counsel was ineffective in failing to object to the introduction of James' preliminary hearing testimony.

In concluding Regan is not entitled to relief, the PCRA court focused on the prejudice prong of the ineffectiveness test. Specifically, the PCRA court determined that the portion of James' preliminary hearing testimony, which was read to the jury, tended to establish Regan did not commit the shooting. *See* PCRA Court Opinion, 7/31/17, at 9-10. We agree and conclude Regan failed to demonstrate a reasonable probability that, but for trial counsel's failure to object to the introduction of James' preliminary hearing testimony, the outcome of Regan's trial would have been different. *See Commonwealth v. King*, 618 Pa. 405, 57 A.3d 607, 613 (2012) ("To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.") (quotation, quotation marks, and citation omitted)); *Commonwealth v. Collins*, 598 Pa. 397, 957 A.2d 237, 244 (2008) ("[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.") (quotation omitted)).

Here, the portion of James' preliminary hearing testimony read to the jury at trial revealed the following: James testified at the preliminary hearing that he did not know Regan and he has no memory of giving a statement to the police as he was "high off PCP" at the time. N.T., 11/19/08, at 15-16. James indicated he had never seen the statement allegedly given by him to

- 17 -

the police until it was presented to him at the preliminary hearing. *Id.* at 16. He testified that he did not sign the statement, and in fact, he alleged that the person who signed the statement had misspelled his name. *Id.* James noted the statement incorrectly indicated that he was "19" when he gave the statement when, in fact, he was not "19" at the time. *Id.* at 18. He further noted the statement incorrectly indicated that he "almost finished the eleventh grade," and in fact, he finished only the ninth grade. *Id.* at 20-21. James disavowed the contents of the police statement, specifically indicating that he did not tell the police that he had knowledge about the shooting at issue or that Regan had told him he "offed an old head" at the playground. *Id.* at 22-24. James testified at the preliminary hearing that he did not give any statement to the police, and he has no idea how the police obtained his personal information. *Id.* at 25-26. James further disavowed that he identified Regan from a photograph and emphasized that he did not know Regan. *Id.* at 24. When the prosecutor suggested that James was being uncooperative and asked whether he wanted to be testifying at the preliminary hearing, James indicated, "[I] can't testify to something I don't know." *Id.* at 26.

On cross-examination at the preliminary hearing, James testified the signature on the police statement was written in a manner inconsistent with his handwriting, it looked like someone had written over the signature, and his alleged signature was misspelled. *Id.* at 27-28. James indicated he has

no memory of giving a statement to the police about the shooting and he was not a witness to the shooting. *Id.* at 30. He testified he has his own open criminal charges "to worry about." *Id.*

Based on the aforementioned, Regan suggests that James' preliminary hearing testimony implicated Regan in the shooting. We disagree with Regan's characterization of the testimony. Further, we note the jury was presented with the police statement of Johnson, who indicated in the statement that he witnessed Regan shoot the victim. Accordingly, we conclude Regan has failed to demonstrate he was prejudiced, *i.e.*, there is a reasonable probability that, but for the reading of James' preliminary hearing testimony to the jury, the outcome of his trial would have been different. *See King*, *supra*. Accordingly, he is not entitled to relief on his claim of ineffective assistance of trial counsel.[6]

For all of the foregoing reasons, we affirm.

Affirmed.

---

[6] To the extent Regan suggests the PCRA court erred in dismissing his aforementioned claims without permitting the claims to be raised at the evidentiary hearing, we note the right to an evidentiary hearing in PCRA proceedings is not absolute and we review the PCRA court's decision for an abuse of discretion. *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa.Super. 2014). In light of our resolution of Regan's issues as indicated *supra*, we conclude the PCRA court did not abuse its discretion.

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary

Date: <u>5/22/18</u>