J-S40013-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MAKKAH DILLARD | : | |
| | : | |
| Appellant | : | No. 1887 EDA 2021 |

Appeal from the PCRA Order Entered September 14, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0005276-2012

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MAKKAH DILLARD | : | |
| | : | |
| Appellant | : | No. 1888 EDA 2021 |

Appeal from the PCRA Order Entered September 14, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0006607-2012

BEFORE:  PANELLA, P.J., STABILE, J., and KING, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED APRIL 4, 2023**

Makkah Dillard appeals from the order entered in the Philadelphia County Court of Common Pleas on September 14, 2021, dismissing, without a hearing, his petition filed pursuant to the Post Conviction Relief Act ("PCRA"),

42 Pa.C.S.A. §§ 9541-9546.[1] Dillard argues the PCRA court erred by dismissing his petition without first holding a hearing on his issues. After review, we find none of Dillard's claims offer him a basis for relief, and we therefore affirm.

We previously summarized the factual and procedural history on direct appeal in this matter as follows:

> In 1998, four-year-old A.F. lived with her mother and four of her siblings. The family moved about often, and was in and out of homeless shelters. A.F. also lived with an aunt for a period of time, and for some unknown reason, A.F. was treated differently than the other children. A.F. was put in an unfurnished room and her siblings would bring food to her. [Dillard], her older half-brother, who did not live at the same address, came into A.F.'s room one night and told her to take off her clothes. When she did not do so, he hit her with an open hand. [Dillard] then removed A.F.'s clothes and put his penis in her vagina. Over the course of approximately one year, [Dillard] repeatedly sexually assaulted A.F., sometimes digitally penetrating her, and at other time[s] forcing her to perform oral sex on him.
>
> At trial, A.F., then age nineteen, testified that the abuse began in 1998 and continued for approximately a year. In other documents admitted at trial, however, A.F. was recorded as stating that the

_____

[1] Dillard filed two separate, but identical, notices of appeal at each of the relevant lower court dockets, which each listed both docket numbers but included a check mark next to the trial docket number at issue. Despite citing to both docket numbers in each notice of appeal, we conclude Dillard complied with **Commonwealth v. Walker**, 185 A.3d 969, 976 (Pa. 2018) (holding that appellants are required to file separate notices of appeal when a single order resolves issues arising on more than one lower court docket), by filing separate notices of appeal, and the appeals need not be quashed. **See Commonwealth v. Johnson**, 236 A.3d 1141, 1148 (Pa. Super. 2020) (*en banc*) (even if appellant lists multiple trial court docket numbers on notices of appeal, appeals need not be quashed because the appellant files an appropriate number of notices of appeal). Moreover, this Court *sua sponte* consolidated the appeals on October 8, 2021.

abuse continued until she was seven or eight years of age. A.F. also testified that she did not tell anyone because [Dillard] told her, "Don't tell nobody. Nobody would believe [you]." According to the victim, the abuse ended when "[Dillard] just disappeared. He just stopped coming around." At trial, it was stipulated that [Dillard] was incarcerated from April of 1999 until April of 2006.

A.F.'s mother died when A.F. was nine years old, and she was left to live with family members. When she was thirteen years old, A.F. entered foster care. At the age of seventeen, A.F. went to live with a new foster mother, D.M, with whom she developed a good relationship. In December, 2011, A.F. decided to write D.M. a letter about her childhood, including an admission of how she had been sexually abused by "my one older brother." D.M. showed the letter to A.F.'s caseworker, and then A.F. gave a statement to police, in which she identified [Dillard] as the perpetrator of the abuse.

In 2006, [Dillard] was released and married M.J., a woman who already had a son, J.J. The couple also had a son born to the marriage. In 2009, [Dillard] was watching the boys while his wife was at work. At that time, J.J. was approximately four years of age. While watching cartoons in a bedroom, [Dillard] told J.J. to "rub his private part," and J.J. complied. J.J. told his mother when she got home, and M.J. confronted [Dillard] about the allegation. According to M.J., although [Dillard] initially neither admitted nor denied the act, he later admitted to it, explaining that it was "a lesson for [J.J.] saying this is not what you're supposed to do. By making [J.J. rub Dillard's penis], that was a lesson for [J.J.] not to do it."

In 2010, [Dillard] was once again incarcerated. In 2012, while [Dillard] remained incarcerated, a police detective investigating A.F.'s case contacted M.J. after discovering that she was married to [Dillard]. After learning that [Dillard] had abused another child, M.J. decided to tell the detective about the incident involving J.J. and [Dillard]. Subsequently, [Dillard] was arrested on numerous offenses as a result of the assaults of both A.F. and J.J. A jury convicted [Dillard] on all charges with regard to each victim. On July 2, 2014, the trial court imposed an aggregate sentence of ten to twenty years of imprisonment.

***Commonwealth v. Dillard***, 981 EDA 2015 (Pa. Super. filed April 15, 2016) (unpublished memorandum) (citations omitted). Dillard filed a timely post-sentence motion, arguing the trial court erred in denying his motion to sever thereby improperly consolidating his charges in a single trial. The motion was denied by operation of law, pursuant to Pa.R.Crim.P. 720(b)(3), on November 10, 2014. Dillard filed a timely appeal, in which he again challenged the consolidation of his charges, along with challenges to the sufficiency and weight of the evidence. We affirmed Dillard's judgment of sentence on April 15, 2016. ***See id***.

A little over a month later, Dillard filed a *pro se* PCRA petition. Counsel was appointed and filed an amended petition and subsequent supplemental petitions. The Commonwealth filed a motion to dismiss and supplemental answers in response to Dillard's petitions. The PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing, and subsequently denied the petition in an order dated September 14. 2021.

On September 29, 2021, Dillard filed timely, counseled notices of appeal under both of the above dockets. On October 8, 2021, this Court consolidated the two appeals *sua sponte*. Dillard was not directed to comply with Pa.R.A.P. 1925(b) and accordingly did not file a 1925(b) concise statement. Nevertheless, the PCRA court filed a 1925(b) opinion, in which it addressed all issues raised in the PCRA petition.

Our review of an order dismissing a PCRA petition is limited to examining whether the PCRA court's determinations are supported by the record and the court's decision is free of legal error. **See Commonwealth v. Shaw**, 217 A.3d 265, 269 (Pa. Super. 2019). Although we give great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record, we apply a *de novo* standard of review to the PCRA court's legal conclusions. **See Commonwealth v. Benner,** 147 A.3d 915, 919 (Pa. Super. 2016).

Further, the PCRA court is not required to hold an evidentiary hearing prior to dismissing a petition as a petitioner is not entitled to a PCRA hearing as a matter of right. **See Shaw,** 217 A.3d at 269. The PCRA court can decline to hold a hearing if there is "no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings." **Id**.

We review a PCRA court's decision to dismiss a petition without a hearing for an abuse of discretion. **See Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa. Super. 2014).

> The PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing. We stress that an evidentiary hearing is not meant to function as a

- 5 -

fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness.

*Commonwealth v. Roney*, 79 A.3d 595, 604-605 (Pa. 2013) (citations and internal quotation marks omitted)

Dillard raises numerous allegations of error, grouped into two classes of claims: (1) trial court error and (2) trial counsel ineffectiveness. All of his claims are focused on his convictions for crimes committed against A.F. Dillard asserts the PCRA court should have held a hearing on these claims.

Preliminarily, we agree with the PCRA court's conclusion that Dillard's claims of trial court error present no issues of material fact. Dillard first argues the trial court erred in denying his motion to sever and consolidating his cases. Dillard raised this same claim in a post-sentence motion and on direct appeal. Accordingly, his first claim has been previously litigated and is not cognizable under the PCRA. *See* 42 Pa.C.S.A. §§ 9543(a)(3) and 9544(a)(2). Dillard further argues the trial court erred by failing to declare a mistrial after Detective Kimberley Boston started crying while testifying. Dillard has waived this claim because he could have raised this claim on direct appeal but failed to do so. *See* 42 Pa.C.S.A. § 9543(a)(3) (petitioner must plead and prove that allegation of error has not been waived); 42 Pa.C.S.A. § 9544(b) ("an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial [or] on appeal[.]").

In the remainder of Dillard's claims, Dillard alleges trial counsel was ineffective for numerous reasons. Counsel is presumed to have been effective.

*See Commonwealth v. Brooks*, 839 A.2d 245, 248 (Pa. 2003). In order to overcome that presumption and prevail on a claim of ineffectiveness, Dillard had to establish: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for their conduct; and (3) he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that because of the act or omission in question, the outcome of the proceeding would have been different. *See id.* As is true for all petitioners, Dillard's "failure to prove any one of the three prongs results in the failure of [his] claim." *Commonwealth v. Ousley*, 21 A.3d 1238, 1244 (Pa. Super. 2011) (citation omitted).

Dillard first asserts the PCRA court should have held a hearing on his assertion that trial counsel was ineffective for failing to call Josephine Cliett, Dillard's aunt, and Nanette Mason, from Christian Transactional Services, to testify as witnesses. According to Dillard, both Cliett and Mason would have impeached A.F.'s testimony regarding where A.F. and Dillard lived during the time-frame of A.F.'s sexual assault allegations and therefore would have supported his alibi defense. Dillard claims Cliett would have testified about living with both A.F. and Dillard during the relevant timeframe; specifically, that she never lived on Master Street, nor did A.F. or Dillard, during the time period for which A.F. accused Dillard of raping her. Further, he claims Cliett would have testified that she never witnessed A.F. with any bruising or injuries. We find his claim in regards to both potential witnesses fails for several reasons.

First, it does not appear from the record that Dillard attached any certification from Mason to his PCRA petition, as required by 42 Pa. C.S.A. § 9545 (d)(1)(i) and Pa.R.Crim.P. 902(A)(15). We therefore could find his claim regarding Mason without merit for this reason alone. Dillard did attach an affidavit from Cliett to his *pro se* petition. However, we nevertheless find his claims are not entitled to relief.

To establish a claim of ineffectiveness based on counsel's failure to call a potential witness, Dillard was required to plead several basic details supporting his claim:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

**Commonwealth v. Sneed**, 45 A.3d 1096, 1108-09 (Pa. 2012) (citation omitted). Thus, trial counsel will not be found ineffective for failing to investigate or call a witness unless there is some showing by the appellant that the witness's testimony would have been helpful to the defense. **See Commonwealth v. Auker**, 681 A.2d 1305, 1319 (Pa. 1996). Additionally, "[a] failure to call a witness is not *per se* ineffective assistance of counsel[,] for such decision generally involves a matter of trial strategy." **Id**. at 1109 (citation omitted).

Dillard's argument regarding Mason lacks development of many of the above elements. Accordingly, due to his lack of development, and failure to

include a certification, we find the PCRA court properly denied his claim regarding Mason.

Even if Dillard was able to show the first three elements of the above standard for Cliett, we do not find he has established he was prejudiced by any failure to call Cliett to testify. Dillard claimed Cliett's testimony would have completely undermined A.F.'s testimony, regarding the location and circumstances of her sexual assault allegations.

To the contrary, we conclude the PCRA court did not err in finding Dillard had not shown that the proposed testimony would have been helpful to the defense. Cliett's proposed testimony is best categorized as a form of impeaching A.F.'s credibility. The PCRA court found that A.F. was nineteen years old when she testified regarding events that began when she was four years old. The PCRA court highlighted A.F.'s testimony that her family moved frequently between homes and shelters due to living in poverty.

Finally, the court noted that the jury was presented with evidence of inconsistencies in A.F.'s testimony and was able to properly resolve those inconsistencies. For example, Dillard conceded that this information regarding A.F. and Dillard's location during the relevant time-frame "would have corroborated other witness testimony provided by the Defense at trial" by showing that A.F. and Dillard's mother resided at a different address then the one provided by A.F. in 1998-1999. Amended PCRA Petition, 8/20/2018, at 9. Dillard and A.F.'s sister testified at trial that A.F. lived in a shelter in 1998,

that A.F. and their mother did not move to Master Street until the middle of 1999, and that Dillard was incarcerated when they moved to Master Street. See N.T., 7/25/13, at 119.

Conversely, the PCRA court noted that A.F. testified the sexual abuse occurred in her own bedroom upstairs, the abuse occurred at night, and that the door was always closed when the abuse occurred.

As a result, Dillard has not established the PCRA court erred in concluding he had failed to establish there was a reasonable probability Cliett's proposed testimony would have changed the verdict. *See Commonwealth v. Tharp*, 101 A.3d 736, 758 (Pa. 2014).

Next, Dillard claims trial counsel was ineffective for failing to object to the introduction of A.F.'s letter to D.M. into evidence. We conclude Dillard has failed to establish arguable merit for this claim.

To establish arguable merit, Dillard must show the objection could have established a cause for relief. *See Commonwealth v. Jones*, 876 A.2d 380, 385 (Pa. 2005). Dillard's underlying claim raises an evidentiary issue, and we note that a trial court has broad discretion over the admissibility of evidence. *See Commonwealth v. Belani*, 101 A.3d 1156, 1160 (Pa. Super. 2014).

Dillard argues A.F.'s letter constitutes inadmissible hearsay, and caused him substantial prejudice that could not be cured. "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted by the declarant." *Commonwealth v. Puksar*, 740 A.2d 219, 225 (Pa. 1999) (citation omitted).

The PCRA court found the letter was not offered for the purpose of proving the truth of A.F.'s assertions against Dillard. Rather, the PCRA court concluded the letter was entered for the purpose of establishing a prompt complaint. We agree A.F.'s letter was not improper hearsay as it was not admitted for the truth of the matter asserted, although we do so on different grounds.[2]

The letter, which was entered into evidence prior to the start of testimony, was first read into the record during the direct examination of Detective Boston, who investigated the report of sexual abuse allegations regarding A.F. The letter was not used to prove Dillard had sexually assaulted A.F., but to show the progression of Detective Boston's investigation and how the letter prompted her to investigate Dillard. The letter was again read into the record during D.M.'s testimony. Similarly, the letter was used in this instance, not for the truth of whether Dillard committed sexual assault, but to explain why D.M. reported the allegations to authorities. As such, the letter was admissible. *See Commonwealth v. Manivannan*, 186 A.3d 472, 482-83 (Pa. Super. 2018) (finding documents downloaded from a website were admissible where the documents were offered not to prove the truth of the matter asserted but to explain the progression of an officer's investigation).

_____

[2] "We may affirm the decision of the trial court if the result is correct on the basis of another exception to the hearsay rule." *See Commonwealth v. Harris*, 658 A.2d 392, 394 n.1 (Pa. Super. 19995) (citations omitted).

Accordingly, trial counsel had no basis to object to admission of the letter. As Dillard's claim lacks arguable merit, his ineffectiveness claim fails.

Next, Dillard argues trial counsel was ineffective for stipulating to Jessica Mercen's testimony, as well as to evidence of Dillard's dates of incarceration.

First, Dillard contends Mercen and other DHS employees should have been called as live witnesses to testify because they would have contradicted A.F.'s testimony and the letter. We once again find Dillard's proffer is deficient as he failed to attach a certification to his petition from Mercen, or other DHS employees, stating any of them would be willing to testify at an evidentiary hearing or what the substance of their testimony would include. *See* 42 Pa. C.S.A. § 9545(d)(1)(i) ("Where a petitioner requests an evidentiary hearing, the petition shall include a certification signed by each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony.")

As far as the stipulation to Dillard's dates of incarceration, Dillard contends he was prejudiced when trial counsel stipulated that Dillard was unavailable during certain times due to his incarceration. Dillard claims the stipulation to his incarceration dates created an inference that he was a lifelong, repeat offender. Dillard suggests trial counsel should have instead stipulated that Dillard was simply not present in the county at the relevant times without giving a reason or his location.

Trial counsel agreed to a stipulation regarding Dillard's prison records, which was read into the record as follows:

Thank you, Judge. Ladies and gentlemen of the jury, the Commonwealth, Ms. Goddard, and I, and Mr. Dillard, the defendant, we have agreed on evidence that between April 9th, 1999, and April 17th, 2006, Mr. Dillard was in continuous custody of either the county or state incarceration. And also during July 31st, 2010, until present, Mr. Dillard was in custody during those times. And, again, that's an agreement. I don't have to present any evidence.

N.T., 7/26/13, at 8. This stipulation was used by trial counsel to support Dillard's alibi defense, by arguing it was impossible for Dillard to have committed the offenses during the alleged time period:

... well, [Dillard] couldn't have done it from 1999 on. And why not? Because [Detective Boston] can punch a computer button and [Dillard's] whole history comes up. And believe or not, this is my argument, at that particular point in time this investigation should have ended right there. Because you can't believe [A.F.], and you knew it was impossible for [Dillard] to have completed any acts the way that [A.F.] is alleging.

N.T., 7/26/13, at 16; **see also** N.T., 7/24/13, at 90-92; N.T., 7/25/13, at 119.

The PCRA court found that "[s]imply telling the jury [Dillard] was 'out of town' would not have provided the same level of impossibility." PCRA Court Opinion, 12/22/21, at 15. We agree. Without the stipulation to the prison records, and Detective Boston corroborating those records, there would be no evidence to support an alibi defense. As such, Dillard has failed to show he was prejudiced by this stipulation. No relief is due on this issue.

Finally, Dillard argues trial counsel was ineffective for failing to introduce into evidence Dillard's age at the time of the offenses. We find this issue is waived, as it was not properly preserved.

Upon review, it appears Dillard conflated two very distinct issues into one claim in his PCRA petition, and continues to do so in his appellate brief. First, his brief contains claims that he should have been tried as a juvenile. Second, other portions of his argument assert that "numerous crimes [Dillard] was convicted of have an age element and there was no showing by the Commonwealth[] as to [Dillard's] age at the time he allegedly raped A.F." Appellant's Brief, at 36. These claims are distinct, as the first raises a statutory claim of entitlement to treatment as a juvenile, while the second raises a challenge to the sufficiency of the evidence to support his convictions.

It is possible to raise both issues separately, however this was not done here. Dillard only raised one issue regarding age and continues to switch back and forth between the above two arguments interchangeably. Dillard does not cite to or develop an argument under section 6355 of the Juvenile Act. **See** 42 Pa.C.S.A. 6355. Nor does he cite to the statutory definitions of his convictions or develop any argument based on those definitions. As such, we find neither argument was properly developed.

It was Dillard's burden to present an argument that is sufficiently developed for our review. **See Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007). To be sufficiently developed, an appellant must support

the argument with references to the record and citations to relevant legal authorities. *See id.*

Here, Dillard has failed to present a coherent argument, supported by citations to the record and relevant authorities, that he is entitled to relief on appeal. We therefore conclude he has waived any argument based on his age at the time of the crimes.

Dillard includes an additional claim in his issue statement, that trial counsel was ineffective for failing to subpoena records from Christian Transactional Services. However, he does not include a separate section to this claim in the argument section of his brief. In fact, the only mention of this alleged failure is one sentence included in the section devoted to his claim that trial counsel failed to call Mason from Christian Transactional Services to testify. Appellant's Brief, at 28-29 ("Moreover, there was no strategic or other reason for not subpoenaing her agency's records and later calling her to testify.") As Dillard failed to develop this claim at all, we find it is waived. Further, even if this claim were not waived on appeal, we agree with the PCRA court that Dillard failed to develop this claim in his PCRA petition as well. *See* PCRA Court Opinion, at 10-11 (finding the claim is undeveloped because Dillard did not explain why living on a different street is relevant to the allegations, why living at a juvenile detention center for an unelaborated time period was relevant; and concluding Dillard failed to prove prejudice where the Commonwealth did not need to prove exact dates of any offense, the jury

was instructed as such, and any inconsistencies in A.F.'s testimony was already addressed).

We have reviewed Appellant's PCRA Petition and the certified record and conclude that the record supports the PCRA court's conclusion that no genuine issue of fact existed to necessitate a hearing. As a result, we discern no abuse of the PCRA court's discretion in refusing to hold a PCRA hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/2023