J-S10035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSEPH ALAN DAVIS | : | |
| | : | |
| Appellant | : | No. 1085 WDA 2022 |

Appeal from the Judgment of Sentence Entered July 19, 2022
In the Court of Common Pleas of Cameron County Criminal Division at
No(s):  CP-12-CR-0000064-2021

BEFORE:  OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED: June 7, 2024**

Joseph Alan Davis ("Davis") appeals from the judgment of sentence imposed following his conviction for possession of a firearm prohibited.[1]  We affirm.

The relevant factual and procedural history underlying this matter is as follows.  In 2020, Davis shared an apartment with his girlfriend, Maci Lyon ("Lyon") in Emporium, Pennsylvania.  In 2021, while Lyon was in jail, authorities recorded telephone conversations she had with her grandmother wherein they discussed the whereabouts of a baby stroller which the grandmother wanted to retrieve.  Lyon stated that the stroller was in the trunk of a little black car owned by Davis, which had been towed by police.  **See** N.T. Suppression, 2/22/22, at 6, 12.  Lyon further indicated that there was a

_____

[1] **See** 18 Pa.C.S.A. § 6105(a)(1).

firearm in the little black car. *See id*. at 10, 12. Lyon stated that the firearm "obviously . . . has to be hers because [Davis] isn't allowed to own one." *Id*. at 13-14. Lyon then indicated that she did not want to discuss the firearm any further because she was on a recorded telephone line. *See id*. at 14.

The contents of the recorded jail conversations were provided to Chief David Merritt of the Emporium Borough Police Department. *See id*. at 5. Only one little black car had been towed by Emporium police in 2020; namely, a 2006 Chevy Cobalt which had been towed from North Cherry Street, an alley located fifty to 100 feet from the apartment building in which Davis and Lyon were then living. *See id*. at 6, 15. The towed vehicle had a Texas license plate; however, a search of the vehicle's VIN number yielded outdated information. *See id*. at 8, 9, 24. The vehicle was towed to Ramsey's Garage in Emporium, and thereafter placed in a secured, fenced-in lot, where it remained. *See id*. at 8.

After receiving the recorded jail conversations, Chief Merritt conducted a subsequent search of the Texas license plate which revealed an owner in St. Mary's, Pennsylvania, who lived down the street from Davis' mother. *See id*. at 9, 16. The chief contacted that individual, who informed him that he sold a van to Davis, and the Texas license plate had been in the back of the van at the time of sale. *See id*. at 9. The chief determined that Davis was not able to possess a firearm because he had a prior conviction for burglary. *See id*. at 11. The chief applied for and obtained a warrant to search the vehicle. *See*

*id*. at 10.  Police subsequently searched the vehicle and found a shotgun in the trunk.  ***See id***. at 24.

Police thereafter charged Davis with possession of a firearm prohibited. At the preliminary hearing, the chief presented a video statement provided by Lyon in which she indicated that Davis purchased the firearm from a pawn shop.  ***See id***. at 23.  Lyon further indicated that she objected to the firearm in their home, and Davis thereafter removed the firearm from the home and placed it in the trunk of the little black car.  ***See id***.  Davis then moved to suppress the firearm on the basis that the search warrant lacked probable cause.[2]  Following a hearing, the trial court denied suppression.

---

[2] We observe that a defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy.  ***See Commonwealth v. Hawkins***, 718 A.2d 265, 267 (Pa. 1998). Generally, a defendant does not have an expectation of privacy in a vehicle where he does not own the vehicle and offers no evidence of his connection to the vehicle or to his connection to the registered owner of the vehicle.  ***See Commonwealth v. Burton***, 973 A.2d 428, 436 (Pa. Super. 2009) (*en banc*). Nonetheless, such standing may be established when the defendant demonstrates, *inter alia*, that the offense charged includes, as an essential element of the prosecution's case, the element of possession at the time of the contested search and seizure.  ***See Commonwealth v. Peterkin***, 513 A.2d 373, 378 (Pa. 1986); ***see also Commonwealth v. Jacoby***, 170 A.3d 1065, 1088 (Pa. 2017) (explaining that the possessory offense, in and of itself, is not dispositive; rather, ***Peterkin*** requires us to focus upon whether the defendant is charged with possessing a certain item or contraband at the time of the contested search and seizure).  Here, the sole crime for which Davis was charged included, as an essential element, the element of possession of a firearm at the time of the contested search of the 2006 Chevy Cobalt and seizure of the firearm.  Thus, despite the lack of evidence of his ownership of the vehicle or connection its registered owner, Davis had standing to challenge the search of the vehicle.

The matter then proceeded to a non-jury trial at which Davis stipulated that he was ineligible to possess a firearm based on his prior convictions for burglary and receiving stolen property. *See* N.T. Trial, 3/29/22, at 3-4. The Commonwealth presented the testimony of Lyon, who indicated that in 2020 she and Davis had lived together in Emporium and that a "long" firearm "showed up" on her bed in their apartment. *Id*. at 8. Lyon indicated that she "freaked out" and told Davis to "get it out of my house." *Id*. According to Lyon, an argument ensued, but Davis took the firearm outside. *See id*. Lyon testified that Davis had a "little black car" that he parked "[i]n the alleyway beside [their] apartment." *Id*. at 9. Lyon was shown a photograph of the contents of the trunk of the black 2006 Chevy Cobalt towed from the alley and she identified therein the firearm that had been on her bed, their child's stroller, and one of Davis' shirts. *See id*. at 9-10. Lyon indicated that she had never driven the little black car or been inside it. *See id*. at 10. On cross-examination, Lyon was questioned regarding her statement to her grandmother in the recorded jail conversation that the firearm was hers, as well as whether she received any consideration from the prosecution based on her assistance in this case. *See id*. at 13-16. Lyon explained that a charge against her for endangering the welfare of children had been withdrawn, and further explained that "I didn't want [Davis] to get in trouble, so I was going to just say that it was my gun" due to her knowledge that Davis was not permitted to have one. *Id*. at 18, 19.

Chief Merritt testified that upon listening to the recorded jail conversations, he determined that the little black car mentioned by Lyon as having a firearm in it was the same vehicle that had been towed by Emporium police in October 2020. *See id*. at 25. The chief explained that he then applied for a search warrant for the little black car and, upon its execution, found a twelve-gauge double barrel shotgun in the trunk, which had been wrapped in a man's flannel shirt, as depicted in the photograph of the trunk of the vehicle, as well as a stroller. *See id*. at 25, 27, 29. The chief noted that Emporium police towed onlyone little black car in 2020, and it was towed from the alley located approximately 100 feet from the apartment that Davis and Lyon shared. *See id*. at 26-27. The chief further noted that he determined that the firearm was operable after he took it to a range and fired two rounds through it. *See id*. The trial court then admitted into evidence a video of the chief firing two rounds from the shotgun. *See id*. at 27-28. At the conclusion of the non-jury trial, the court found Davis guilty of possession of a firearm prohibited. On July 19, 2022, the trial court sentenced Davis to three and one-half to ten years in prison. Davis filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Davis raises the following issues for our review:

1. Whether there was sufficient evidence presented by the Commonwealth at the time of the bench trial upon which the court could have found [Davis] guilty of 18 Pa.C.S.[A.] § 6105(a)(1) – possession of a firearm prohibited?

2. Whether the trial court abused its discretion by denying [Davis'] motion for suppression of evidence by failing to find that the alleged firearm was obtained by virtue of a search warrant that lacked probable cause?

Davis' Brief at 5 (unnecessary capitalization omitted).

In his first issue, Davis challenges the sufficiency of the evidence supporting his conviction. Our standard of review of a sufficiency challenge is well-settled:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa. Super. 2009) (citations omitted). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of circumstantial evidence. *See Commonwealth v. Estepp*, 17 A.3d 939, 943-44 (Pa. Super. 2011).

Section 6105 of the Pennsylvania Crimes Code defines a person not to possess firearms, in relevant part, as follows: "[a] person who has been convicted of [certain enumerated offenses] shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell,

transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S.A. § 6105(a)(1).[3]

Possession can be found by actual possession or constructive possession. *See Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018). When there is no direct evidence the person was in physical possession of the firearm, the Commonwealth must prove the element of possession through what has been described as the "legal fiction" of constructive possession. *See id*. This Court has stated that a defendant has constructive possession of contraband if he has conscious dominion of it, that is, he has the "power to control the contraband and the intent to exercise that control." *Id*. (citation omitted). Constructive possession is "an inference arising from a set of facts that possession of the contraband was more likely than not[,]" *see Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (citation omitted) and may be established by the totality of the circumstances, *see Parrish*, 191 A.3d at 36; *see also Commonwealth v. Harvard*, 64 A.3d 690, 699 (Pa. Super. 2013) (holding that an intent to maintain conscious dominion may be inferred from the totality of the circumstances, and circumstantial evidence may be used to establish a defendant's possession of drugs or contraband).

---

[3] As indicated above, Davis stipulated at trial that he was ineligible to possess a firearm due to his prior convictions. *See* N.T. Trial, 3/29/22, at 3-4.

Davis concedes that his prior convictions for burglary and receiving stolen property rendered him ineligible to possess a firearm pursuant to section 6105(a)(1). Accordingly, his sufficiency challenge pertains solely to the possessory element of his conviction.[4] In this regard, Davis contends that the evidence presented at trial reflected that, on an unspecified date and in an unknown manner, a weapon appeared in the apartment he shared with Lyon, and Davis removed the weapon from the home. However, he argues that no evidence was presented regarding what happened to that weapon. According to Davis, the evidence presented at trial established only that, at some unspecified point in the past and for an unknown duration of time, Davis had a non-descript little black car, but the Commonwealth failed to offer any evidence that Davis had accessed this car at any certain point in time, or that he had accessed the vehicle at or around the time, or at any time after, a firearm was allegedly removed from their apartment.

Davis further argues that, aside from Chief Merritt's supposition, there was no connection made between the non-descript little black car Lyon

_____

[4] Notably, in order to preserve a sufficiency challenge, an appellant must identify in the Rule 1925(b) concise statement the specific element(s) of the crime that were allegedly unproven at trial. *See Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008) (holding sufficiency challenge waived where the appellant did not specify the allegedly unproven elements in his concise statement). While Davis did not specify in his concise statement his claim that the possessory element was unproven, we decline to find waiver on this basis because there are only two elements for the crime in question, and Davis stipulated to the other element.

described as being owned by Davis and the towed car which was later searched by police. Davis points out that Lyon never testified that she knew the car which she associated with Davis to have ever been parked in a certain location on a certain day, nor did she testify to ever knowing the vehicle to have been towed. Davis claims that no testimony or other evidence was offered regarding what happened to the "little black car" between the time it was towed in October 2020 and the date the search warrant was executed. Davis asserts that it was not clear where the vehicle was located at the time it was searched, nor whether that vehicle, or any part of it, had been accessed by anyone between the two dates. On this basis, Davis contends that the evidence was insufficient to connect the recovered firearm in the vehicle to the firearm that was in their apartment.

Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we conclude that the evidence presented at trial, along with all reasonable inferences deduced therefrom, was sufficient to sustain Davis' conviction under section 6105(a)(1).[5] Davis conceded that he was ineligible to possess a firearm. **See** N.T. Trial, 3/29/22, at 3-4. Thus, the Commonwealth needed only to prove that Davis constructively possessed the

---

[5] The trial court considered Davis' sufficiency challenge and concluded that it lacked merit. **See** Trial Court Opinion, 10/11/22, at 1. However, the trial court did not specifically explain its reasoning, and merely referred this Court to the transcript of trial testimony provided by Lyon, whom the trial court found to be credible. **See id**.

shotgun found in the trunk of the black 2006 Chevy Cobalt. In this regard, the Commonwealth presented the testimony of Lyon, who confirmed that in 2020, while she and Davis lived together in Emporium, a "long" firearm "showed up" on her bed in their apartment. *Id*. at 8. Lyon explained that she "freaked out" and told Davis to "get it out of [her] house," whereupon Davis took the firearm outside. *Id*. Lyon further testified that Davis had a "little black car" that he parked "[i]n the alleyway beside [their] apartment." *Id*. at 9. Lyon was shown a photograph of the contents of the trunk of the black 2006 Chevy Cobalt towed from the alley and searched by police and identified therein the firearm that had been on her bed, their child's stroller, and one of Davis' shirts. *See id*. at 9-10. Lyon indicated that she had never driven the little black car or been inside it. *See id*. at 10.

Additionally, Chief Merritt testified that he determined that the little black car—mentioned by Lyon in her recorded jail conversations as having a firearm in it—was the same vehicle that had been towed by police in October 2020. *See id*. at 25. The chief explained that he then applied for a search warrant for the little black car and, upon its execution, found a stroller and a twelve-gauge double barrel shotgun in the trunk, which had been wrapped in a men's flannel shirt, as depicted in the photograph of the trunk of the vehicle. *See id*. at 25, 27, 29. The chief noted that Emporium police only towed one little black car in 2020, and it was towed from the alley located approximately 100 feet from the apartment that Davis and Lyon shared. *See id*. at 26-27.

The chief further noted that he determined that the firearm was operable after he took it to a range and fired two rounds through it. *Id*.

Based on our review, we conclude that this evidence was sufficient to support the possessory element of Davis' conviction for possession of a firearm prohibited. The trial court, sitting as the finder of fact, was entitled to find that the combined testimony provided by Lyon and Chief Merritt established that Davis possessed the shotgun located in the apartment he shared with Lyon, that he owned (or at least had access to) the black 2006 Chevy Cobalt, that he wrapped the shotgun in one of his flannel shirts, and thereafter placed it in the trunk of his little black car alongside his child's stroller. Although the evidence was circumstantial, the finder of fact was permitted to infer from the totality of the evidence presented that it was more likely than not that Davis had the power to control the firearm and the intent to exercise control of the firearm. *See Hopkins*, 67 A.3d at 820. Accordingly, we conclude that the totality of the circumstantial evidence presented was sufficient to prove beyond a reasonable doubt that Davis constructively possessed the firearm in violation of section 6105(a)(1). *See id*. As such, Davis' sufficiency challenge merits no relief.

In his second issue, Davis challenges the denial of his suppression motion. Our standard of review of an order denying suppression is to determine:

> whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those

facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (quotations and citations omitted). Our scope of review is limited to the evidence presented at the suppression hearing. *See In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013).

Search warrants must be supported by probable cause. *See Commonwealth v. Johnson*, 42 A.3d 1017, 1031 (Pa. 2012). Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted. *See id*. In considering an affidavit of probable cause, the issuing magistrate must apply a "totality of the circumstances test" which requires the magistrate to "make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit . . . including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. (citations omitted). A court reviewing a search

warrant determines only if a substantial basis existed for the magistrate to find probable cause. **See id**.

Davis contends that, while evidence was offered to support a fair probability that he operated the little black car where it was anticipated to be found, no fair probability was established that he possessed a firearm prior to the issuance of the warrant. Davis asserts, at the time the warrant was issued, Lyon admitted ownership of the firearm, never alleged Davis had previously possessed or even knew of the gun's existence, and the car was held on a lot where Davis could not access it. On this basis, Davis argues that the firearm was in a location over which he lacked control and there is no evidence that he even knew that the firearm was there. Davis maintains that the record does not support the trial court's conclusion that the warrant was supported by probable cause.

The trial court considered Davis' second issue and determined that it lacked merit. **See** Trial Court Opinion, 10/11/22, at 1 (concluding that the suppression issue was meritless and referring this Court to its March 17, 2022 opinion). The trial court reasoned that "there was sufficient probable cause for [the magistrate judge] to authorize the search warrant . . . for Chief Merritt to search the 'little black car,' namely a 2006 Chevy Cobalt for a gun." Trial Court Opinion, 3/17/22, at 3 (unnecessary capitalization omitted).

Reviewing the affidavit prepared by Chief Merritt, we conclude that the trial court's determination that there was a substantial basis for the issuing

- 13 -

magistrate to conclude that probable cause existed is supported by the suppression record. In his affidavit, the chief indicated that, in the recorded jail conversations, Lyon spoke of a small black vehicle belonging to Davis which had been towed by police and which had a gun in it. **See** Affidavit of Probable Cause, 3/17/21, at 2. The affidavit stated that, during one conversation, a woman asked Lyon where the small black car was located because she wanted to get the stroller from the trunk of the car. **See id**. Lyon indicated that she did not know because the police took the car because they were looking for a gun in their apartment. **See id**. When asked if there was a gun in the car, Lyon responded "yes, 'one.'" **Id**. The chief then noted that he had tagged a small black Chevy car in October 2020 which was leaking fuel and had a Texas license plate. **See id**. The chief explained that, at that time, he was unable to identify the owner of the vehicle or determine where it came from. **See id**. The chief attested that the vehicle had been towed to a secured location where it had remained in a secured state ever since. **See id**. The chief indicated that his subsequent search of the Texas license plate identified "Smith" as the registered owner of the Texas license plate on the 2006 Chevy Cobalt. **Id**. According to the affidavit, the chief contacted "Smith [who] stated that he sold a van to . . . Davis last summer and that the Texas license plate was inside the van. Smith said that the van was broken down and was parked at Davis' family member's home." **Id**. The affidavit continued, "This would indicate that the black Chevy Cobalt that was towed

belongs to Davis and or Lyon who lived together . . . in October 2020." *Id*. at 3.

Based on these averments, we conclude that the totality of the facts and circumstances within Chief Merritt's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a man of reasonable caution in the belief that a search should be conducted. *See Johnson*, 42 A.3d at 1031. Moreover, the circumstances set forth in the affidavit as well as the basis of knowledge of the persons supplying hearsay information therein (*i.e.*, Lyon) created a fair probability that contraband or evidence of a crime would be found in the black 2006 Chevy Cobalt. *See id*. Accordingly, we conclude that the affidavit provided a substantial basis for the magistrate to find probable cause to search the black 2006 Chevy Cobalt. Consequently, Davis' second issue merits no relief.

As neither of Davis' issues entitle him to relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge King joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 06/07/2024